*In the Matter of Michael Chase*, No. 69, September Term, 2025. Opinion by Kehoe, S., J.

**Background:** Appellant applied to the Maryland State Police for a handgun carry permit in October 2022. The Department denied the application based on his 2009 Virginia felony conviction for conspiracy to commit grand larceny, for which he received a three-year sentence with all but 30 days suspended. That denial was upheld first by the Office of Administrative Hearings and then by the Circuit Court for Charles County. On appeal, Appellant argued that his out-of-state conviction should be converted to the equivalent Maryland offense and statutory penalty—an approach used for "disqualifying crimes" under Public Safety § 5-101(g)(3).

**Holdings:** The Court held that although Public Safety § 5-306(a)(2)(i) appears clear on its face, it is ambiguous as applied to out-of-state convictions; however, the statutory language, structure, and legislative history demonstrate that the Maryland equivalency analysis from § 5-101(g)(3) does not apply to handgun permit eligibility. Instead, § 5-306(a)(2)(i) relies on the actual sentence imposed, including suspended portions. Because Appellant's Virginia conviction was a felony and carried an imposed sentence exceeding one year, he is disqualified from obtaining a handgun permit under any interpretive scenario. The Court therefore affirmed the judgment of the circuit court and the Department's denial of his application.

## STATUTORY INTERPRETATION – PUBLIC SAFETY § 5-306(a)(2)(i) – AMBIGUITY AS APPLIED TO OUT-OF-STATE CONVICTIONS

Although the language of Public Safety § 5-306(a)(2)(i) is facially clear, its application to out-of-state convictions is ambiguous, permitting the court to examine statutory context, legislative history, and related case law to determine legislative intent.

## STATUTORY INTERPRETATION – DISTINCTION BETWEEN "CARRIES" AND "HAS BEEN IMPOSED"

Public Safety § 5-101(g)(3) focuses on the statutory maximum penalty an equivalent Maryland offense "carries," while Public Safety § 5-306(a)(2)(i) relies on the actual sentence "imposed." This linguistic distinction forecloses importing the § 5-101(g) equivalency framework into § 5-306.

## LEGISLATIVE HISTORY – CHANGE FROM "COULD HAVE BEEN IMPOSED" TO "HAS BEEN IMPOSED"

Legislative history shows that earlier draft language referring to a sentence that "could have been imposed" was replaced with the enacted text "has been imposed," signaling an intent to rely on an applicant's actual, individualized sentence rather than a hypothetical maximum penalty.

**CRIMINAL LAW – DEFINITION OF "SENTENCE IMPOSED" – SUSPENDED SENTENCES**

A sentence is "imposed" when the court pronounces it, even if execution is suspended; the imposed term includes both executed and suspended portions.

**FIREARMS – DISTINCTION BETWEEN POSSESSION PROHIBITIONS AND CARRY PERMITS QUALIFICATIONS**

Public Safety § 5-306 creates stricter qualification criteria for obtaining a handgun permit than Public Safety § 5-133 does for prohibiting possession of firearms; ineligibility for a handgun permit is not limited to "disqualifying crimes" under § 5-133(b)(1).

**FIREARMS – HANDGUN PERMIT ELIGIBILITY – OUT-OF-STATE CONVICTIONS – NO CONVERSION TO MARYLAND OFFENSE REQUIRED**

The equivalency analysis used for "disqualifying crimes" under Public Safety § 5-101(g)(3) does not apply to Public Safety § 5-306(a)(2)(i). The two provisions serve distinct legislative purposes and employ materially different statutory language. Section 5-306(a)(2)(i) contains no textual directive to convert an out-of-state conviction to a Maryland equivalent offense, and such conversion is inconsistent with the statutory focus on the actual sentence imposed.

**ADMINISTRATIVE LAW – PROPER BASIS FOR DENIAL – ERRONEOUS REASONING YET CORRECT RESULT**

Even where the Administrative Law Judge misstated the statutory ground for denial, the agency's ultimate decision must be affirmed if the record demonstrates that the denial was legally correct under the appropriate statutory provision.

Circuit Court for Charles County
Case No. C-08-CV-24-000133

<u>REPORTED</u>

<u>IN THE APPELLATE COURT</u>

<u>OF MARYLAND</u>

No. 69

September Term, 2025

_____

IN THE MATTER OF MICHAEL CHASE

_____

Berger,
Kehoe, S.,
Hotten, Michele D.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Kehoe, J.

_____

Filed: July 8, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

On October 9, 2022, Appellant, Michael Chase ("Mr. Chase"), applied to the Maryland Department of State Police ("Department") for a permit to carry a handgun. The Department denied Mr. Chase's application due to his 2009 conviction in Virginia for conspiracy to commit grand larceny, a felony, in which he received a three-year sentence of incarceration with all but 30 days suspended and two years of supervised probation. Mr. Chase appealed the denial of his handgun permit application ("Application") to the Office of Administrative Hearings ("OAH"), which affirmed the Department's denial on February 2, 2024. Mr. Chase then filed for judicial review in the Circuit Court for Charles County, which affirmed the ruling of the OAH and decision of the Department. Mr. Chase now appeals the judgment of the circuit court to this Court.

In this case, we consider the language of § 5-306 of the Public Safety Article,[1] which enumerates the qualifications to obtain a permit to wear and carry a handgun ("handgun permit") in Maryland. Our focus is on the qualification that the applicant "has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than [one] year has been imposed[.]" Md. Code Ann., Pub. Safety § 5-306(a)(2)(i). For it is this language that is at issue in the appeal before us.

---

[1] All statutory citations, unless indicated otherwise, refer to the Public Safety Article of the Maryland Code. *See* Md. Code Ann., Pub. Safety.

## I. QUESTIONS PRESENTED

The questions presented for our review, which we have rephrased and separated into three questions,[2] are as follows:

1. Whether § 5-306(a)(2)(i) is clear and unambiguous as it applies to out-of-state convictions?

2. Whether the Maryland equivalency analysis applies to out-of-state convictions under § 5-306(a)(2)(i)?

3. Whether it was proper for the Department to deny Mr. Chase's handgun permit application under § 5-306(a)(2)(i)?

For the reasons stated herein, we answer in the negative to the first two questions and in the affirmative on the last question, and therefore affirm the judgment of the Circuit Court for Charles County and the decision of the Department.

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Denial by the Maryland Department of State Police

Mr. Chase applied for a handgun permit with the Licensing Division of the Department on October 9, 2022. Through a criminal background investigation, the Department discovered that in September of 2008, Mr. Chase was charged in Alexandria, Virginia with possession of burglarious tools, disregarding or eluding a law enforcement

---

[2] Mr. Chase presented the question for our review in his brief as follows: "Was the Department's disapproval of Appellant's CCW application proper?" The Department presented the question as: "Was it proper for the Department to deny Mr. Chase's application for a handgun carry permit under Public Safety § 5-306(a)(2) on the basis that he had been convicted of a felony in Virginia?"

command, and grand larceny–stealing property greater than $200 not from a person.[3] All charges were considered to be felonies in Virginia at the time. On December 15, 2008, nolle prosequi was entered on the first two charges. On March 12, 2009, in the Circuit Court of the City of Alexandria, Mr. Chase pled guilty to conspiracy to commit grand larceny and was sentenced to incarceration for three years with all but 30 days suspended and two years of supervised probation.

The Department denied Mr. Chase's Application due to his 2009 Virginia conviction. Initially, the Department denied the Application on December 12, 2022, based on § 5-133(b)(1),[4] determining that Mr. Chase had been convicted of a disqualifying crime under § 5-101(g).[5] Mr. Chase requested an informal review of the denial. On March 19, 2023, First Sergeant John Hickey, Assistant Commander of the Licensing Division, sustained the denial.

After consultation with Assistant Attorney General Mark Bowen, the Department revised the basis for the denial. In an updated denial letter dated June 28, 2023, Mr. Chase

---

[3] VA Code Ann. § 18.2-95 (1998) (grand larceny); § 18.2-22 (1983) (conspiracy to commit felony).

[4] Section 5-133(b)(1) reads: "Subject to § 5-133.3 of this subtitle, a person may not possess a regulated firearm if the person: (1) has been convicted of a disqualifying crime[.]" Md. Code Ann., Pub. Safety § 5-133(b)(1).

[5] Section 5-101(g) defines a "Disqualifying crime" as:

(1) a crime of violence;

(2) a violation classified as a felony in the State; or

(3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

Md. Code Ann., Pub. Safety § 5-101(g).

3

was advised the denial was based on his conviction of a felony or misdemeanor for which a sentence of imprisonment for more than one year has been imposed, pursuant to § 5-306(a)(2).[6]

## B.    Appeal to the Office of Administrative Hearings

On May 30, 2023, Mr. Chase appealed the denial of his Application to the OAH. A hearing was held before an Administrative Law Judge ("ALJ") on November 7, 2023.

Senior Trooper Matthew Spencer ("Sr. Tpr. Spencer"), on behalf of the Licensing Division, Handgun Permit Unit, presented the Department's case.[7] Mr. Chase's Application and criminal record were entered into evidence. Sr. Tpr. Spencer testified that the initial denial based on a disqualifying crime pursuant to § 5-133(b)(1) was the incorrect basis for the denial. He further advised that the Department was "no longer arguing that Mr. Chase is prohibited from the possession of firearms [under § 5-133(b)(1)], only the issuance of a handgun permit [under § 5-306(a)(2)(i)]." On cross-examination, Sr. Tpr. Spencer clarified that the "disapproval is about the sentence [Mr. Chase] received, not the crime, per se."

The evidence presented by Mr. Chase at the hearing detailed the restoration of his civil rights in Virginia and his subsequent eligibility for various firearms-related licenses,

---

[6] Section 5-306(a) reads, in pertinent part: "the Secretary shall issue a permit within a reasonable time to a person who the Secretary finds: [. . .] (2)(i) has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than [one] year has been imposed[.]" Md. Code Ann., Pub. Safety § 5-306(a)(2)(i).

[7] Although Mr. Chase had the burden of proof, the parties agreed the Department would present its case first.

4

federally and in Maryland. Counsel for Mr. Chase entered into evidence a July 9, 2020 order from the Governor of Virginia restoring Mr. Chase's civil rights[8] and a September 17, 2020 order from the Circuit Court for the City of Alexandria restoring Mr. Chase's firearm privileges.[9] Mr. Chase's State of Maryland Firearms Dealer License, dated September 7, 2023, Federal Firearms Dealer's License, dated July 27, 2023, and a Notice of Approval for Designated Collector Status from the Maryland State Police, dated July 8, 2023, were also admitted into evidence. While not entered into evidence, Mr. Chase's Handgun Qualification License, dated June 27, 2023, was marked for identification.

Mr. Chase testified that he operates a firearms transfer business, MJ's Properties d/b/a Guns and Ammo, purchasing and distributing firearms in the State of Maryland. Mr. Chase further explained that he has "a Federal Firearm License that allows [him] to distribute, sell, and deliver firearms federally, [] in any state where a customer might purchase a firearm."

During his testimony, Mr. Chase acknowledged his conviction in Virginia and that the sentence imposed was three years of incarceration with all but 30 days suspended. He clarified that he never went "to prison" but instead completed 30 days of community service with the City of Alexandria as part of his sentence.

In closing argument, Sr. Tpr. Spencer asserted:

---

[8] The civil rights restored by the Governor's order included the "rights to vote, hold public office, serve on a jury, and to be a notary public." The Governor's order did not restore the right "to ship, transport, possess or receive firearms[.]"

[9] The circuit court's order permits Mr. Chase to "possess, transport, and carry a firearm, ammunition, or a stun weapon."

The argument as to what the Maryland equivalent charge would be and what statutory penalty is, is irrelevant in this matter. We're not making the argument that Mr. Chase has been convicted of a crime prohibiting him from the possession of a handgun. We're arguing that Mr. Chase received a sentence greater than [one] year for the conviction he received, which would prohibit him from the issuance of a handgun permit in the State of Maryland.

Counsel for Mr. Chase in closing argument maintained that when the conviction originates from out-of-state, the Department must use the equivalent Maryland offense and penalty to determine whether the conviction is disqualifying. Here, the equivalent offense is theft from $100 to $1,500 and the statutory maximum penalty is six months incarceration. Accordingly, counsel argued that Mr. Chase is eligible for a handgun permit and the Department erred in their denial.

On February 2, 2024, the ALJ issued its written decision, sustaining the Department's denial of Mr. Chase's Application. The ALJ made the following factual findings:

1. On October 9, 2022, [Mr. Chase] filed an original application to obtain a handgun permit, under the category of personal protection.

2. As part of the application process, the Department conducted a criminal background check of [Mr. Chase].

3. On September 25, 2008, in the Circuit Court [of] the City of Alexandria, Virginia, [Mr. Chase] was charged with Conspiracy to Commit Grand Larceny of Property with an aggregate value of $200.00 or more, a felony. On March 12, 2009, he was convicted of the crime and sentenced to three years['] incarceration, of which two years and eleven months were suspended. [Mr. Chase] was placed on supervised probation for two years. []

4. [Mr. Chase's] conviction has not been expunged.

5. [Mr. Chase] operates a firearms business in Maryland in which he purchases and sells firearms. He has current federal and Maryland firearms licenses. []

6

6. On [September 17, 2020], the Circuit Court of the City of Alexandria, Virginia restored his rights to purchase and maintain firearms. []

The ALJ disagreed with Mr. Chase's argument that the Department must convert an out-of-state conviction to the equivalent Maryland offense and penalty. According to the ALJ, the "equivalency provision" that Mr. Chase advocates, originates from case law that does "not apply to felony convictions under section 5-101(g)(2) [] but instead apply only to misdemeanor convictions."[10] Moreover, the ALJ agreed with the Department that "Maryland is not required to follow another state's decision to restore handgun rights."[11]

Ultimately, the ALJ concluded:

> The Department disapproved [Mr. Chase's] application because he had a disqualifying conviction. It presented evidence showing that [Mr. Chase] has a conviction in [Virginia] for grand larceny, a felony conviction with a sentence for more than one year. As of the date of the hearing, this conviction was not expunged. [Mr. Chase] did not offer any evidence to dispute these facts. Accordingly, I conclude that [Mr. Chase] has failed to establish that the Department's disapproval of his application was incorrect.

With that, the ALJ upheld the Department's denial of Mr. Chase's Application.

---

[10] *McCloy*, *McCloud*, *McLean*, and *Brown* specifically analyze misdemeanors as "disqualifying crimes" under § 5-101(g)(3), not felonies under § 5-101(g)(2). *See generally In the Matter of Mark McCloy*, 488 Md. 326 (2024); *McCloud v. Dep't of State Police*, 200 Md. App. 725 (2011), *aff'd sub nom.*, *McCloud v. Dep't of State Police, Handgun Permit Rev. Bd.*, 426 Md. 473 (2012); *Maryland State Police v. McLean*, 197 Md. App. 430 (2011); *Brown v. Handgun Permit Rev. Bd.*, 188 Md. App. 455 (2009).

[11] Mr. Chase did not argue before the circuit court, and does not now argue before this Court, that the restoration of his civil rights and firearm privileges in Virginia affects his eligibility to obtain a handgun permit in Maryland. Therefore, we do not address the issue.

### C. Judicial Review in the Circuit Court for Charles County

On February 23, 2024, Mr. Chase filed for judicial review of the ruling from the OAH in the Circuit Court for Charles County. The court held a hearing on February 24, 2025, during which the parties presented oral arguments.

Mr. Chase repeated the arguments previously made before the OAH, that an out-of-state conviction must be converted to the equivalent Maryland offense and penalty to determine eligibility for a handgun permit. In addition, Mr. Chase asserted that the "OAH's ruling in this matter was not supported by substantial evidence, was erroneous as a matter of law, and was arbitrary and capricious." As such, Mr. Chase requested that the circuit court reverse the ruling of the OAH and the Department's denial of his Application.

The Department argued again that Mr. Chase's conviction "for which a sentence of imprisonment for more than [one] year has been imposed," pursuant to § 5-306(a)(2)(i), rendered him ineligible to obtain a handgun permit. The Department highlighted that the case law relied upon by Mr. Chase applies to "disqualifying crimes" under § 5-133(b)(1) and § 5-101(g), not to § 5-306(a)(2)(i). Consequently, the denial was proper and the Department requested that the ruling of the OAH be affirmed.

From the bench, the circuit court affirmed the ruling of the OAH and the Department's denial of Mr. Chase's Application. In its ruling, the court explained:

> I have reviewed the filings in this case. I read the memorand[a] and looked at the Office of Administrative [Hearings] record and the record in this case.
>
> [. . .]

8

[Mr. Chase] makes some very interesting arguments regarding the inter-relation of the statutes, the legislative history regarding the statutes and the presentation was very enlightening in this, in all of that and how all of these matters tie together. And in light of the changes that are occurring in the Court's interpretations of gun laws recently, there's been substantial litigation in that field.

However, I have to go back to the requirement that the Court interpret the language if it's clear and unambiguous.

In this case in looking at [§] 5-306[(a)(2)(i)], it indicates that the Secretary shall issue a permit within a reasonable time to a person who the Secretary finds has not been convicted of a felony or misdemeanor for which a sentence of imprisonment [] for more than one year has been imposed.

The way this statute is written is clear, it's not ambiguous and the sentence doesn't require any interpretation.

The court issued its written order on March 3, 2025. Mr. Chase now appeals the judgment of the circuit court to this Court.

Additional facts may be included in the discussion as they become relevant.

## III.   STANDARD OF REVIEW

When reviewing a decision of an administrative agency, such as the Department's decision to deny a handgun permit application, we review:

> the agency's decision directly, not the decision of the circuit court. A reviewing court will affirm the decision of the agency when it is supported by substantial evidence appearing in the record and it is not erroneous as a matter of law. Because an agency's decision is presumed *prima facie* correct, we review the evidence in the light most favorable to the agency.

*McCloud*, 200 Md. App. at 729 (quoting *McLean*, 197 Md. App. at 437). Moreover, "[w]hen we review an agency decision that is a mixed question of law and fact, we apply the substantial evidence test, that is, the same standard of review we would apply to an agency factual finding." *Brown*, 188 Md. App. at 467 (quoting *Comptroller of Treasury v.*

9

*Science Applications Int'l Corp.*, 405 Md. 185, 192–93 (2008)) (internal brackets and quotation marks omitted).

As there are no facts in dispute here, the question of whether the Department's denial of Mr. Chase's Application was proper is a question of law. Questions of law are reviewed *de novo*. *Id.* However, weight is given "to an agency's interpretation of a statute it is charged with enforcing where the interpretation is longstanding and falls within the agency's area of expertise." *Id.* Where the statutory language is clear and unambiguous, "administrative constructions, no matter how well entrenched, are not given weight." *McLean*, 197 Md. App. at 438.

## IV. DISCUSSION

On appeal before this Court, Mr. Chase argues that the language of § 5-306(a)(2)(i) is ambiguous and, therefore, we must rely on the rules of statutory interpretation to ascertain the meaning of the statute. According to Mr. Chase, § 5-306(a)(2)(i) must be interpreted consistently with Maryland's practice of converting out-of-state convictions to the equivalent Maryland offenses and penalties, as established in case law interpreting § 5-101(g)(3). Applying that framework, Mr. Chase asserts that his Virginia felony conviction for conspiracy to commit grand larceny should be converted to Maryland's misdemeanor theft under Criminal Law Article § 7-104(g)(2) for "theft of property or services with a value of at least $100 but less than $1,500[.]" *See* Md. Code Ann., Crim. Law § 7-104(g)(2).

Because the statutory maximum penalty for a first offense under Criminal Law Article § 7-104(g)(2) is six months, Mr. Chase urges that we apply that penalty to his

10

conviction and cap his sentence at six months, even though the sentence imposed was three years. *See* Md. Code Ann., Crim. Law § 7-104(g)(2)(i)(1). Lastly, Mr. Chase argues that because § 5-306(a)(2) is ambiguous, the rule of lenity applies, which requires us to construe the statute in his favor. For those reasons, Mr. Chase requests that this Court reverse the judgment of the circuit court and order the issuance of a handgun permit.

The Department counterargues that § 5-306(a)(2)(i) is clear and unambiguous, and therefore, our analysis does not need to go beyond the plain meaning of the statute. Moreover, the Department disputes that § 5-306(a)(2)(i) mandates the conversion of out-of-state convictions to the equivalent Maryland offenses and penalties, as required by case law interpreting § 5-101(g)(3). Section 5-101(g)(3) differs in its language and purpose from § 5-306(a)(2)(i), which implies that the statutes be interpreted separately.

Similarly, the phrase "sentence imposed" is clear and unambiguous. The Department argues that Mr. Chase's approach to disregard the actual imposed sentence and instead "invent a sentence based on what an individual hypothetically could have been sentenced to" creates an absurd result and contravenes the plain meaning of the statute. Lastly, the Department avers the rule of lenity only applies to criminal statutes, which § 5-306(a)(2) is not. *See Oglesby v. State*, 441 Md. 673, 676 (2015). As such, the Department requests that this Court affirm the judgment of the circuit court, upholding the Department's denial of Mr. Chase's Application.

### A. Handgun Permits: Public Safety § 5-301, *et seq.*

First, to purchase and possess a handgun legally in Maryland, one must obtain a Handgun Qualification License ("HQL") from the Department, pursuant to § 5-117.1. *See*

11

Md. Code Ann., Pub. Safety § 5-117.1. To qualify for an HQL, one must be at least 21 years old, pass a Department approved firearms safety course, reside in Maryland, and not be prohibited from buying or possessing a handgun under federal or State law. Md. Code Ann., Pub. Safety § 5-117.1(d); *see also McCloy*, 488 Md. at 330. Next, to purchase a specific handgun, one must submit a firearm application to a licensed dealer or designated law enforcement agency. Md. Code Ann., Pub. Safety §§ 5-117, 5-118. The firearm application requires information about the handgun to be purchased and personal information about the applicant, including an affirmation that the applicant has never been convicted of a "disqualifying crime." Md. Code Ann., Pub. Safety § 5-118(b); *see also McCloy*, 488 Md. at 330–31.

Section 5-133 enumerates the restrictions on the possession of regulated firearms, including handguns. *See* Md. Code Ann., Pub. Safety § 5-133. An individual is prohibited from possessing a handgun in Maryland if the individual "has been convicted of a disqualifying crime[.]" Md. Code Ann., Pub. Safety § 5-133(b)(1).[12] A "disqualifying crime" is defined in § 5-101(g) as "(1) a crime of violence; (2) a violation classified as a felony in the State; or (3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than [two] years." Md. Code Ann., Pub Safety § 5-101(g). Those convicted of a disqualifying crime will be ineligible for an HQL and will have their firearm application denied.

---

[12] Section 5-133 lists other disqualifications that would prohibit an individual from legally possessing a regulated firearm. None of these other disqualifications are pertinent for our discussion. *See* Md. Code Ann., Pub. Safety § 5-133.

12

Even if successful in obtaining an HQL and purchasing a handgun legally, it is still illegal to "wear, carry, or transport a handgun, whether concealed or open, on or about the person," unless a "permit to wear, carry, or transport the handgun has been issued under Title 5, Subtitle 3 of the Public Safety Article[.]" Md. Code Ann., Crim. Law § 4-203(a)(1); (b)(2); *see also* Md. Code Ann., Pub. Safety § 5-303 ("A person shall have a permit issued [. . .] before the person carries, wears, or transports a handgun.").[13] Upon receipt of a handgun permit application, the Secretary of the State Police must conduct a criminal history records check on the applicant to determine whether the applicant is qualified for the permit. Md. Code Ann., Pub. Safety § 5-305.

Section 5-306 enumerates the qualifications an applicant must possess to successfully obtain a handgun permit. For the case before us, the pertinent part of § 5-306 reads:

> (a) Subject to subsections (c) and (d) of this section, the Secretary shall issue a permit within a reasonable time to a person who the Secretary finds:
>
> [. . .]
>
> (2)(i) has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than 1 year has been imposed[.]

Md. Code Ann., Pub. Safety § 5-306(a)(2)(i). Also relevant for our discussion here is the qualification that the applicant "is not otherwise prohibited by State or federal law from

---

[13] There are, of course, other exceptions to this prohibition. None of these other exceptions are pertinent to recite for our discussion here. *See* Md. Code Ann., Crim. Law § 4-203(b).

purchasing or possessing a handgun." Md. Code Ann., Pub. Safety § 5-306(a)(10)(ii).[14]

Accordingly, someone who is prohibited from possessing a firearm due to a conviction of a disqualifying crime under § 5-133(b)(1) is likewise ineligible to obtain a handgun permit under § 5-306(a). *See McCloud*, 200 Md. App. at 730; *see also* Md. Code Regs. 29.03.02.03; Md. Code Regs. 29.03.01.03.[15] However, not everyone who is ineligible for a handgun permit is prohibited from possessing a firearm.

---

[14] Other disqualifications include, but are not limited to: being convicted of a crime involving controlled dangerous substances; being a respondent against whom a protective order has been entered; being an alcoholic, addict, or habitual drug user; suffering from certain mental disorders; or exhibiting a propensity for violence or instability that would render handgun possession a danger to others. *See* Md. Code Ann., Pub. Safety § 5-306(a). Applicants must also complete a certified firearms training course before obtaining a handgun permit. Md. Code Ann., Pub. Safety § 5-306(a-1).

[15] The Code of Maryland Regulations ("COMAR") for the Department on the qualifications for the issuance of a handgun permit, in pertinent part, reads:

> A. Qualifications. In accordance with Public Safety Article, §5-306, Annotated Code of Maryland, a person is eligible for issuance of a handgun permit only if the person:
>
> [. . .]
>
> (2) Is not prohibited from possessing a handgun under COMAR 29.03.01.03 or otherwise prohibited from purchasing or possessing a handgun under federal or State law;
>
> (3) Has not been convicted of a felony or misdemeanor for which a sentence of imprisonment for more than [one] year has been imposed, unless the person has been pardoned or the United States Attorney General has granted relief;
>
> [. . .]

Md. Code Regs. 29.03.02.03.

COMAR 29.03.01.03, as cited above, regarding the restrictions on the possession of regulated firearms, including handguns, in pertinent part, reads:

> A. A person may not possess a regulated firearm if the person:

### B. Statutory Interpretation

To ascertain the meaning of a statute, "[w]e first look to the language of the statute to determine its plain meaning[.]" *McCloud v. Dep't of State Police, Handgun Permit Rev. Bd.*, 426 Md. 473, 479 (2012). If the language of a statute is clear and unambiguous, "we apply the language as written and in a commonsense manner." *McLean*, 197 Md. App. at 440 (quoting *Downes v. Downes*, 388 Md. 561, 571 (2005)). "We do not add words or ignore those that are there." *Id.* We read the statute as a whole, ensuring that "no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Barbre v. Pope*, 402 Md. 157, 172 (2007) (quoting *Dep't of Health and Mental Hygiene v. Kelly*, 397 Md. 399, 420 (2007)). If the statute is clear and unambiguous, we need not resort to any other rules of statutory interpretation. *McCloud*, 426 Md. at 480.

However, if the language is ambiguous, that is, "subject to more than one interpretation," we may look to "the statute's legislative history, case law, and statutory purpose" to determine the meaning of the statute. *Brown*, 188 Md. App. at 468 (quoting *Opert v. Crim. Injs. Comp. Bd.*, 403 Md. 587, 593 (2008)). When relevant, we may look at

---

[. . .]
(4) Has been convicted of:

    (a) A crime of violence;

    (b) Any violation classified as a felony in this State;

    (c) Any violation classified as a misdemeanor in this State that carries a statutory penalty of more than [two] years; or

    [. . .]

Md. Code Regs. 29.03.01.03.

"the statute's structure, including the title, and how the statute relates to other laws." *Id.* The primary goal in statutory interpretation is to "ascertain and effectuate the real and actual intent of the Legislature." *McCloud*, 426 Md. at 479 (quoting *Robinson v. Balt. Police Dep't*, 424 Md. 41, 50 (2011)). "Additionally, we must always give the statute a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *McCloud*, 426 Md. at 480 (quoting *State v. Johnson*, 415 Md. 413, 422 (2010)) (internal quotation marks omitted).

## C. Whether § 5-306(a)(2)(i) is Clear and Unambiguous as it Applies to Out-of-State Convictions

First, we address whether § 5-306(a)(2)(i) is unclear or ambiguous. Mr. Chase argues that § 5-306(a)(2)(i) is ambiguous, questioning how the statute treats out-of-state convictions, particularly for states that do not use felony-misdemeanor classifications; whether the statute means "all felonies and only misdemeanors with a year or more incarceration imposed," or whether it means "either a felony or a misdemeanor where a year or more was imposed[;]" and "what does it mean to have a sentence imposed" and whether we use Maryland's definition or the definition of the other jurisdiction. However, we need not answer all of these questions to resolve the appeal before us.

Whether a statute is clear and unambiguous may depend on the issue presented in the case. *See Gardner v. State*, 344 Md. 642, 648 (1997) ("Statutes that are clear when viewed separately may well be ambiguous where their application in a given situation, or when they operate together, is not clear."). For example, in *Brown*, this Court concluded

16

that the language of § 5-101(g)(3)[16] was ambiguous "with respect to which state's penalty is the proper measure." 188 Md. App. at 473. Whereas in *McLean*, we concluded that § 5-101(g)(3) was clear and unambiguous "with respect to the issue presented in [that] case[,]" which was whether the statutory penalty was to be considered at the time of conviction or at the time of the handgun permit application. 197 Md. App. at 432, 440.

Brown was convicted in the District of Columbia ("D.C.") for possession of a dangerous weapon, which was a misdemeanor offense that carried a maximum sentence of one year of imprisonment in D.C. *Brown*, 188 Md. App. at 459. Under D.C.'s statutory maximum penalty, Brown's conviction would not be a disqualifying crime. However, Brown's conviction was equated to the Maryland offense of wearing or carrying a dangerous weapon, which is a misdemeanor subject to imprisonment of up to three years, and thus considered a disqualifying crime under § 5-101(g)(3). *Id.*

The issue presented in *Brown* was "whether the Board erred in concluding that Brown was convicted of a misdemeanor in [D.C.] for which the equivalent Maryland offense carries a potential statutory penalty of more than two years." *Id.* at 461. We concluded that the statute was ambiguous with respect to this issue and held that under § 5-101(g)(3) a "conviction's potential punishment is measured by reference to the penalty under the law of Maryland[.]" *Id.* at 473, 480. Another issue raised in *Brown* was whether to use the past or present equivalent offense and penalty. *Id.* at 486. However, we declined

---

[16] Public Safety § 5-101(g)(3) states that a "disqualifying crime" includes "a violation classified as a misdemeanor in the State that carries a statutory penalty for more than [two] years."

to answer that question "in Brown's case because the penalty for the comparable Maryland offense has been the same at all times since Brown's conviction."[17] *Id.*

McLean was convicted of a misdemeanor that, at the time of his handgun permit application, carried a maximum sentence of more than two years, which would be disqualifying. *McLean*, 197 Md. App. at 432. However, at the time of the conviction, the offense carried a maximum sentence of not more than six months, which would not be disqualifying. *Id.* at 433. Therefore, the issue turned on the word "carries" in the phrase "a person who has been convicted of a violation classified as a misdemeanor in the State that *carries* a statutory penalty of more than two years may not possess a regulated firearm." *Id.* at 440. We concluded that for the issue in that case, the statute was not ambiguous and held that in § 5-101(g)(3) the "word 'carries' expresses the present tense—i.e., that the statutory penalty to be considered is the penalty in effect at the time that qualification is being considered." *Id.*

The ultimate issue presented here is whether it was proper for the Department to deny Mr. Chase's Application under § 5-306(a)(2)(i). First, we disregard the following arguments unnecessary to resolve the appeal before us. We agree with the Department in that we need not address how the statute applies to out-of-state convictions from states that do not use felony-misdemeanor classifications, because the conviction in this case originated in Virginia, which does use felony-misdemeanor classifications. Just as we declined to decide in *Brown* whether the past or present penalty applied, we likewise need

---

[17] This question was later answered in *McLean*. 197 Md. App. at 440.

not address this question that Mr. Chase raises here—how the statute applies to out-of-state convictions from states that do not use felony-misdemeanor classifications—because resolving it is unnecessary to decide the present case. *See Brown*, 188 Md. App. at 486.

Similarly, we need not address whether the statute means "all felonies and only misdemeanors with a year or more incarceration imposed," or whether it means "either a felony or a misdemeanor where a year or more was imposed[.]" If we agree with Mr. Chase that his conviction should be converted to the Maryland equivalent, Mr. Chase's conviction becomes a misdemeanor, with a sentence of more than one year imposed. If we disagree that the conviction should be converted to the Maryland equivalent, Mr. Chase's conviction remains a felony, with a sentence of more than one year imposed. Under either scenario, Mr. Chase's conviction would either be: 1.) a felony; 2.) a felony with a sentence of more than one year imposed; or 3.) a misdemeanor with a sentence of more than one year imposed. Any one of these convictions would disqualify Mr. Chase from obtaining a handgun permit under § 5-306(a)(2)(i). So, whether the statute applies to "all felonies and only misdemeanors with a year or more incarceration imposed, or [. . .] either a felony or a misdemeanor where a year or more was imposed" makes no difference in this appeal.

Next, we "look to the language of the statute to determine its plain meaning[.]" *McCloud*, 426 Md. at 479. Again, § 5-306(a)(2) states that a handgun permit shall be issued to an applicant that "has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than [one] year has been imposed[.]" Md. Code Ann., Pub. Safety § 5-306(a)(2). A conviction is the "act or process of judicially finding someone guilty of a crime; the state of having been proved guilty" or the "judgment [] that a person

19

is guilty of a crime." *Conviction*, BLACK'S LAW DICTIONARY (12th ed. 2024). A felony is a "serious crime [usually] punishable by imprisonment for more than one year [. . . .] Also termed *major crime*; *major offense*; *serious crime*[,]" as opposed to a misdemeanor. *Felony*, BLACK'S LAW DICTIONARY (12th ed. 2024). A misdemeanor, on the other hand, is:

> A crime that is less serious than a felony and is [usually] punishable by fine, penalty, forfeiture, or confinement ([usually] for a brief term) in a place other than prison (such as a county jail). When punishable by confinement, a misdemeanor most commonly entails incarceration for less than a year. [. . .] Also termed *minor crime*; *summary offense*.

*Misdemeanor*, BLACK'S LAW DICTIONARY (12th ed. 2024).

A sentence is a "judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer." *Sentence*, BLACK'S LAW DICTIONARY (12th ed. 2024). Imprisonment is the "act of confining a person, [especially] in a prison [. . . .] Also termed *incarceration*. [. . .] The period during which a person is not at liberty[.]" *Imprisonment*, BLACK'S LAW DICTIONARY (12th ed. 2024). The word "impose" derives from the Latin *imposui*, which means "put upon."[18] Therefore, in this context, a sentence that has been *imposed*, is the actual and individualized sentence "put upon" a defendant by the court in a specific case, as opposed to a maximum (or minimum) sentence that a particular offense *carries* as indicated by law. *Cf.* Md. Code

---

[18] *Impose*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/imposed [https://perma.cc/QGC9-N8R5] (last visited Apr. 22, 2026).

Ann., Pub. Safety § 5-101(g)(3) ("that carries a statutory penalty of more than [two] years").

While the language used in § 5-306(a)(2)(i) on its face is unambiguous, its application to out-of-state convictions remains unclear. Must an out-of-state conviction be converted to its equivalent Maryland offense and penalty, as is required in § 5-101(g)? We disagree with the circuit court's finding that the statute is clear and unambiguous in regard to the issue presented in this case.[19] We conclude that § 5-306(a)(2)(i) is unclear and ambiguous as it relates to the application of § 5-306(a)(2)(i) to out-of-state convictions.

To resolve this ambiguity, we may look to any relevant case law, the statute's legislative history, the statute's purpose and structure, and how it relates to other similar laws to determine the meaning of the statute. *See Brown*, 188 Md. App. at 468. Even when the language of the statute is unambiguous, "it is useful to review legislative history to confirm that interpretation and to eliminate another version of the legislative intent alleged to be latent in the language." *Harford Cnty. v. Mitchell*, 245 Md. App. 278, 283–84 (2020) (quoting *Blackstone v. Sharma*, 461 Md. 87, 113 (2018)) (internal quotation marks omitted).

### D. Case Law of Title 5. Firearms

Mr. Chase is correct in that there are not any Maryland cases that discuss how § 5-306(a)(2)(i) applies to out-of-state convictions. Instead, Mr. Chase uses case law interpreting § 5-101(g)(3) to determine how § 5-306(a)(2)(i) should treat out-of-state

---

[19] As discussed *infra*, despite the circuit court's error here, it correctly upheld the Department's denial of Mr. Chase's Application.

convictions. Mr. Chase argues that such case law applies to § 5-306(a)(2)(i) and that his out-of-state convictions must be converted to the equivalent Maryland offense and penalty. We briefly summarize the case law in question below.

Section 5-133(b)(1) prohibits anyone who has been convicted of a "disqualifying crime" from possessing a regulated firearm, which includes handguns. Md. Code Ann., Pub. Safety § 5-133(b)(1). Section 5-101(g)(3) identifies "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than [two] years" as a disqualifying crime. Md. Code Ann., Pub. Safety § 5-101(g)(3). Therefore, someone who has been convicted of "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than [two] years" is prohibited from possessing a handgun in Maryland. Such a person would also be disqualified from obtaining a handgun permit under § 5-306(a)(10)(ii).[20]

There are several cases in Maryland that interpret the meaning of "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than [two] years" in § 5-101(g)(3). *See generally McCloy*, 488 Md. 326; *McCloud*, 426 Md. 473; *McCloud*, 200 Md. App. 725; *McLean*, 197 Md. App. 430; *Brown*, 188 Md. App. 455. In *Brown*, this Court adopted the Opinion of the Attorney General[21] and held that "a violation

---

[20] "[T]he Secretary shall issue a permit within a reasonable time to a person who the Secretary finds: [. . .] based on an investigation: [. . .] is not otherwise prohibited by State or federal law from purchasing or possessing a handgun." Md. Code Ann., Pub. Safety § 5-306(a)(10)(ii).

[21] On March 27, 2006, the Maryland Attorney General issued an Opinion interpreting § 5-101(g)(3), that was subsequently used by the Department to assist in the

classified as a misdemeanor in the State" included out-of-state convictions. 188 Md. App. at 477. We also concluded that "the conviction's potential punishment is measured by reference to the penalty under the law of Maryland for a comparable violation[,]" not the penalty in the other jurisdiction. *Id.* at 480. In *McLean*, again adopting the Opinion of the Attorney General, we held that "the statutory penalty to be considered is the penalty in effect at the time that qualification is being considered[,]" rather than at the time of the conviction. 197 Md. App. at 440.

In *McCloud*, we reaffirmed the interpretation of § 5-101(g)(3) from the previous cases and confirmed that § 5-133(b)(1) and § 5-306(a) were "interrelated in that a person who cannot lawfully possess a handgun under [] § 5-133(b), is subsequently not eligible for a permit to wear, carry or transport a handgun under [] § 5-306(a)." 200 Md. App. at 732. Our Supreme Court, in affirming this Court's holdings, summarized our interpretation of § 5-101(g)(3) as follows:

> [A] "disqualifying crime" can be an offense committed out-of-state that, when looking to a comparable violation in Maryland, is a misdemeanor and

---

determination of whether applicants qualified for handgun permits. 91 Op. Att'y Gen. 68 (Md. 2006); *see also Brown*, 188 Md. App. at 464. The Opinion concluded that the definition of "disqualifying crime" includes out-of-state convictions, not just Maryland offenses. 91 Op. Att'y Gen. at 76–78. An out-of-state offense would constitute a "disqualifying crime" if it would be considered a Maryland misdemeanor carrying a possible sentence of more than two years under Maryland law. *Id.* The Opinion further explained that because the firearms statute regulates current possession, the relevant penalty is the one in effect at the time of possession, not at the time of the conviction. *Id.* at 78–79; *see also Chesek v. Jones*, 406 Md. 446, 463 (2008) ("We have said that courts are not bound by an Attorney General's Opinion, but that when the meaning of legislative language is not entirely clear, such legal interpretation should be given great consideration in determining the legislative intention.") (quotation marks omitted) (citing *State v. Crescent Cities Jaycees*, 330 Md. 460, 470 (1993)).

23

has a penalty of greater than two years imprisonment. To determine whether the out-of-state offense was a disqualifying crime, [. . .] we must look to the penalty for the equivalent Maryland offense in effect at the time the person convicted seeks to possess a regulated firearm. [. . .] [I]f the current penalty for the Maryland offense is different from the penalty in effect at the time of the offense, the current penalty determines whether the offense is a disqualifying crime.

*McCloud*, 426 Md. at 477 (internal quotation marks and citations omitted). Our Supreme Court also concluded that we did not err in applying the Attorney General's Opinion. *Id.* at 487.

The statutory interpretation of § 5-101(g) continued with our Supreme Court's opinion in *McCloy*, which instructs "how to determine whether an out-of-state crime is equivalent to a Maryland disqualifying crime." 488 Md. at 329. First, "only the Maryland statutes in effect at the time of application may be considered in the disqualifying crime analysis[,]" rather than those in effect at the time of the conviction. *Id.* at 340–41. Next, the Department must determine whether the elements of the applicant's out-of-state offense match or are narrower than a disqualifying Maryland offense; if so, the conviction is disqualifying, and if not, the Department should then assess—provided it has a sufficient basis to determine the underlying conduct—whether the applicant's specific acts would have supported a conviction for a disqualifying Maryland crime. *Id.* at 353.

### E. Legislative History of § 5-306(a)(2)

Mr. Chase further alleges that the legislative history shows that § 5-133, § 5-101, and § 5-306 were "brought together under one title because they serve the same purpose – the regulation of who can possess firearms in Maryland and under what circumstances." Consequently, the legislative history reflects a purpose that "favors an interpretation of []

24

§ 5-306 that converts out of state convictions to Maryland law[,]" including the penalty, according to Mr. Chase. We review the legislative history of § 5-306 below.

The Public Safety Article of the Maryland Code was enacted in 2003 through Senate Bill 1, "to revise, restate, and recodify the laws of the State relating to public safety, including laws relating to the State Police, [. . .] firearms, [. . .] etc." Legislative Reference Bill File for S.B. 001, 2003 Gen. Assemb., 417th Sess. (Md. 2003) (hereinafter "2003 S.B. 001 Bill File") at 1. Section 5-306 was "derived without substantive changes from former Art. 27, § 36E[.]"[22] Md. Code Ann., Pub. Safety § 5-306, Revisor's Note. Both § 5-306(a)(2)(i) and Article 27, § 36E(a)(2) use the exact same language: "has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than one year has been imposed[.]" Md. Code, Art. 27, § 36E(a)(2) (1972 Cumulative Supp.) (repealed by Acts 2002, ch. 26 § 1, eff. Oct. 1, 2002); *see also* Md. Code Ann., Pub. Safety § 5-306(a)(2)(i). However, there is nothing in the legislative bill file for the Public Safety Article that discusses the meaning of the language contained in § 5-306(a)(2)(i) or

---

[22] Art. 27, § 36E reads, in pertinent part:

A permit to carry a handgun shall be issued within a reasonable time by the Superintendent of the Maryland State Police, upon application under oath therefor, to any person whom he finds:

[. . .]

(2) Has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than one year has been imposed or, if convicted of such a crime, has been pardoned or has been granted relief pursuant to Title 18, § 925(c) of the United States Code[.]

Md. Code, Art. 27, § 36E (1972 Cumulative Supp.) (repealed by Acts 2002, ch. 26 § 1, eff. Oct. 1, 2002).

how to apply the statute to out-of-state convictions. *See* 2003 S.B. 001 Bill File. As such, we look to the predecessor of § 5-306—Article 27, § 36E.

Article 27, § 36 was enacted in 1972 through Senate Bill 205/House Bill 277, also known as the Handgun Control Bill. Md. Code, Art. 27, § 36E (1972 Cumulative Supp.) (repealed); *see also* Legislative Reference Bill File for S.B. 205, 1972 Gen. Assemb., Reg. Sess. (Md. 1972) (hereinafter "1972 S.B. 205 Bill File"). Governor Marvin Mandel submitted to the 1972 Session of the General Assembly "a bill to control the wide-spread use of handguns in criminal activities in the State of Maryland." 1972 S.B. 205 Bill File at 60. Governor Mandel's "concern was based upon the upsurge of crime in the State and particularly within Baltimore City where 62% of all homicides in 1971 were committed with handguns." *Id.* Per the declaration of policy found within Article 27, § 36, "[f]urther regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens." Md. Code, Art. 27, § 36 (1972 Cumulative Supp.) (repealed). The purpose of the Handgun Control Bill was to curb "the widespread carrying of handguns on the street and in vehicles by persons who have no legitimate reason to carry them[,]" as indicated in Governor Mandel's letter to Delegate Donald B. Robertson dated December 21, 1971. 1972 S.B. 205 Bill File at 171. However, such purpose does not tell us how to interpret the language of Article 27, § 36E(a)(2), and in turn § 5-306(a)(2), for the purpose of applying the statute to out-of-state convictions.

We then ask whether there are any other indicia in the legislative history that may help us interpret the language of Article 27, § 36E(a)(2). In the legislative bill file for the

26

Handgun Control Bill, there is an earlier draft of the bill, which appears to be prepared by Governor Mandel's office.[23] *See* 1972 S.B. 205 Bill File at 171; 148–65. The draft includes the following language for § 36E:

> A permit to carry a handgun may be issued by the Superintendent of the Maryland State Police, upon application therefor, to any person who he finds:
>
> [. . .]
>
> (2) has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than one year *could have been* imposed[.]

1972 S.B. 205 Bill File at 161 (emphasis added). However, this language differs from the language that was ultimately used in Article 27, § 36E(a)(2) and later in § 5-306(a)(2)— "has not been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than one year *has been* imposed[.]" Md. Code, Art. 27, § 36E(a)(2) (1972 Cumulative Supp.) (repealed); *see also* Md. Code Ann., Pub. Safety § 5-306(a)(2)(i) (emphasis added).

There is nothing found in the bill file that explains the change from "could have been" to "has been." However, the change in the language alone reflects the legislature's

---

[23] While the bill file is not organized in chronological order, this earlier draft of the Handgun Control Bill is followed by a letter dated January 25, 1972 from Delegate Donald B. Robertson to Mary Betters. In that letter, Delegate Robertson indicates that he is "enclosing a copy of H.B. 277, the Governor's gun control – stop and frisk proposal." 1972 S.B. 205 Bill File at 167. Followed by that, is a letter dated December 27, 1971 from Delegate Robertson to Governor Mandel thanking the Governor for his "letter of December 21, 1971, enclosing [his] tentative proposed handgun bill." *Id.* at 169. Following that letter is a letter dated December 21, 1971 from Governor Mandel to Delegate Robertson, in which Governor Mandel writes, "I am enclosing herewith for your information and comments, a tentative draft of a handgun bill which has been prepared by my office." *Id.* at 171.

intention. "When examining a statute's legislative history, we view amendments that were considered and/or enacted as the statute passed through the Legislature, and the statute's relationship to earlier and subsequent legislation as external manifestations or persuasive evidence of legislative purpose." *SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 647–48 (2018) (quoting *Rose v. Fox Pool Corp.*, 335 Md. 351, 360 (1994)) (internal quotation marks and brackets omitted). The legislature's intention was to use the actual and individualized sentence "put upon" a defendant by the court in a specific case, as opposed to a possible sentence that could have been imposed as indicated by law for a particular offense.

F.      Whether the Maryland Equivalency Analysis Applies to Out-of-State Convictions Under § 5-306(a)(2)(i)

There are no cases that address how § 5-306(a)(2)(i) applies to out-of-state convictions. As a result, Mr. Chase argues that we should apply the law established in the cases which have interpreted § 5-101(g)(3). In *Brown*, *McLean*, and *McCloud*, although all applicants were seeking a handgun permit under § 5-306, all were denied by the Department based on a conviction of a disqualifying crime under § 5-101(g)(3). *See Brown*, 188 Md. App. at 459; *McLean*, 197 Md. App. at 432; *McCloud*, 200 Md. App. at 728. Whereas Mr. Chase was denied a handgun permit based on § 5-306(a)(2)(i), rather than a conviction of a disqualifying crime under § 5-101(g). The Department clarified this at the Administrative Hearing, testifying that it was "no longer arguing that Mr. Chase is prohibited from the possession of firearms, only the issuance of a handgun permit." Mr. Chase fails to acknowledge that these cases interpret and apply § 5-101(g)(3), not § 5-

28

306(a)(2)(i). As such, the law established in these cases does not automatically apply to § 5-306(a)(2)(i).[24]

Mr. Chase argues that because of the similarities of § 5-306 and § 5-133—in their structure within the Public Safety Article and their purpose of gun control—the case law that applies to § 5-133(b)(1) and § 5-101(g)(3) also applies to § 5-306. Although the general purpose of these statutes is gun control and each appear under the same Article in the Code, they address a distinct legislative objective and regulatory function. *See* 1972 S.B. 205 Bill File at 171. While § 5-306 governs handgun permit eligibility and access, § 5-133 governs the general possession of regulated firearms and restrictions. While § 5-306 imposes stricter disqualifiers, § 5-133 implements broader disqualifiers. While § 5-306 is focused on a particular applicant's criminal history and how severely they were sentenced, § 5-133 is focused on establishing uniform criteria that can be applied to the general population. We disagree that the statutes are so similar in their structure and purpose that the law of one applies to the other.

Mr. Chase argues that the language of § 5-306(a)(2)(i) is ambiguous and that we should apply the same interpretation used for § 5-101(g)(3) to convert an out-of-state

---

[24] The ALJ in this case found that the "equivalency provision" that Mr. Chase advocates, originates from case law that does "not apply to felony convictions under [§] 5-101(g)(2) [] but instead apply only to misdemeanor convictions" under § 5-101(g)(3). We disagree with the ALJ's conclusion of law in this regard. Considering § 5-101(g)(2) includes the same operative language as § 5-101(g)(3)—"a violation *classified* as a [felony/misdemeanor] *in the State*"—we see no basis to interpret § 5-101(g)(2) differently from § 5-101(g)(3). (emphasis added). Accordingly, the same case law that governs the application of the equivalency provision to misdemeanor convictions under § 5-101(g)(3) likewise applies to felony convictions under § 5-101(g)(2).

offense to the equivalent Maryland offense. Moreover, Mr. Chase argues that we should ignore the actual "sentence imposed" upon him and use the statutory maximum penalty of the equivalent Maryland offense. However, there is a grave difference in the language of "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than [two] years" and the language of "a felony or of a misdemeanor for which a sentence of imprisonment for more than [one] year has been imposed[.]" *See* Md. Code Ann., Pub. Safety §§ 5-101(g)(3), 5-306(a)(2)(i). The two statutes should be treated separately.

We previously interpreted the language of "a violation classified as a misdemeanor in the State" in § 5-101(g)(3) as it relates to out-of-state convictions in *Brown*. 188 Md. App. at 480. Under § 5-101(g)(3), "a disqualifying conviction from another state is any violation that would be classified in Maryland as a misdemeanor that carries a statutory penalty of more than two years." *Id.* We further explained:

> As a matter of grammatical construction, we are persuaded that it is most logical to construe the phrase "that carries a statutory penalty of more than [two] years" as modifying "misdemeanor" rather than "violation." The conviction for the violation can be from any state; the disqualification under [] § 5–101(g)(3), however, is only for those violations "classified as a misdemeanor in this State," and within that class of offenses, only those that "carr[y] a statutory penalty of more than [two] years" under Maryland law.

*Id.* The language "classified . . . in the State" in § 5-101(g)(3) directly invites us to equate the out-of-state offense to a comparable Maryland offense. Unlike the language in § 5-101(g)(3), nothing in the language of § 5-306 indicates that an out-of-state offense must be converted to the equivalent Maryland offense and penalty. *See* Md. Code Ann., Pub. Safety § 5-101(g)(3) ("a violation *classified* as a misdemeanor *in the State*") (emphasis

30

added); *cf.* Md. Code Ann., Pub. Safety § 5-306(a)(2)(i) ("convicted of a felony or of a misdemeanor").

Moreover, the language "that carries a statutory penalty of more than [two] years" in § 5-101(g)(3) and "for which a sentence of imprisonment for more than [one] year has been imposed" in § 5-306(a)(2)(i) hold very different meanings. *See* Md. Code Ann., Pub. Safety §§ 5-101(g)(3), 5-306(a)(2)(i). Similar to *McLean*, where the operative word was "carries," here the operative word is "imposed." *See McLean*, 197 Md. App. at 440 (applying the plain meaning of the word "carries" from § 5-101(g)(3) to hold that "the statutory penalty to be considered is the penalty in effect at the time that qualification is being considered."). In *Moats v. Scott*, our Supreme Court addressed what it means when a court *imposes* a sentence of imprisonment: "When a defendant is convicted of a crime that carries a penalty of incarceration, the court may, of course, *impose* a prison sentence up to the maximum term allowed, and, unless the court orders otherwise, that sentence will, routinely, be immediately executed[.]" 358 Md. 593, 595 (2000) (emphasis added). Alternatively, a court may impose a sentence and suspend the execution of all or part of the sentence in favor of probation. *Id.* However, even when the court suspends the execution of a portion or all of the sentence, the sentence is still considered "imposed." *See id.* The Court further explained:

> [W]hen a court imposes a sentence and then [. . .] suspends execution of all or part of that sentence in favor of probation, and later strikes the probation and directs execution of all or part of the previously suspended part of the sentence, the court does not, at that time reimpose all or any part of the sentence. *The full sentence has already been imposed* and does not need any reimposition.

31

*Id.* at 596–97 (emphasis added). In sum, a "sentence imposed" includes suspended sentences.

While the language of § 5-101(g)(3) expressly directs us to look to the statutory maximum penalty of the equivalent Maryland offense, the phrase "sentence imposed" in § 5-306(a)(2)(i) does the opposite: it focuses exclusively on the punishment the applicant actually received, and therefore does not require any conversion to an equivalent Maryland offense or penalty.

Moreover, as explained in *McCloy*, the equivalency analysis used in the § 5-101(g)(3) context is concerned with comparing the elements of the out-of-state *offense* to the elements of the equivalent Maryland *offense* for purposes of identifying the appropriate statutory maximum penalty and whether that penalty is more than two years. *See McCloy*, 488 Md. at 352–53. There is no comparison of the sentence imposed or statutory maximum penalties in the § 5-101(g)(3) equivalency analysis. Therefore, even if one assumed that an equivalency analysis was required under § 5-306 for the *offense*, the statute's reliance on the "sentence imposed"—rather than any statutory maximum penalty—forecloses the use of equivalency for the sentence. As such, we disagree with Mr. Chase's proposition that "we apply Maryland's maximum penalty for a violation of [Md. Code Ann., Crim. Law] § 7-104(g)(2) to [his] conviction and cap [his] sentence at six months." Such interpretation is in direct contradiction with the language of the statute, which we will not adopt. "We must always give the statute a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *McCloud*, 426 Md. at 480 (citations and quotation marks omitted).

32

The legislative history further confirms an intention that the two statutes be treated differently based on the intentional choice to differ their language. The legislature's conscious decision to change the language from "could have been" to "has been" refutes Mr. Chase's position that § 5-306(a)(2)(i) should be treated the same as § 5-101(g)(3). *See* 1972 S.B. 205 Bill File at 161. Instead, the change in language reflects a legislative intention to use the actual and individualized sentence "put upon" a defendant by the court in a specific case, as opposed to a possible sentence that could have been imposed as indicated by law for a particular offense. The term "could have been imposed" refers to the statutory maximum penalty for the offense, which is consistent with the meaning of the phrase "that carries a statutory penalty" in § 5-101(g)(3). *See* Md. Code Ann., Pub. Safety § 5-101(g)(3). This change in the text indicates that the legislature intended § 5-101(g)(3) and § 5-306(a)(2)(i) to be treated differently. If the legislature intended for § 5-306(a)(2)(i) to be treated the same as § 5-101(g)(3), it would have used the same language found in the latter, however, it did not. *See Brown*, 188 Md. App. at 479 n.7 ("For reasons that are not apparent to us, the phrase 'disqualifying crimes' [from § 5-133(b)(1) and § 5-101(g)] was not utilized in the recodified statute governing applications for handgun permits, [§ 5-306]"). The legislature is "presumed to have meant what it said and said what it meant." *Witte v. Azarian*, 369 Md. 518, 525 (2002). We are charged with effectuating the intent of the legislature. *See McCloud*, 426 Md. at 479.

Taken together, the case law, statutory language, purpose, and legislative history make clear that the interpretation of § 5-101(g)(3) cannot be imported to § 5-306(a)(2)(i). The former focuses on the statutory maximum penalty for an equivalent Maryland offense,

33

which expressly requires an equivalency analysis; whereas the latter relies on the actual sentence imposed in the applicant's case. Furthermore, there are no textual indications in § 5-306(a)(2)(i) that an out-of-state offense must be converted to its equivalent Maryland offense and penalty. The deliberate choice to modify the proposed language—changing from "could have been" imposed to "has been" imposed—persuades us of a legislative purpose to treat these provisions of the Public Safety Article differently. *See Gilroy*, 459 Md. at 647–48 (quoting *Rose*, 335 Md. at 360). As such, we hold that § 5-306(a)(2)(i) does not require the Maryland equivalency analysis, as is required under § 5-101(g) for out-of-state convictions.

### G. Whether it Was Proper for the Department to Deny Mr. Chase's Handgun Permit Application Under § 5-306(a)(2)(i)

Upon holding that § 5-306(a)(2)(i) does not require the Maryland equivalency analysis for out-of-state convictions, we return to the plain meaning of the statute and apply it to the case before us. Here, Mr. Chase's criminal record was admitted into evidence during the Administrative Hearing. The judgment of the Circuit Court of the City of Alexandria indicates that Mr. Chase, "who stands indicted for a *felony*, to-wit: Conspiracy to Commit Grand Larceny [. . .] pleaded GUILTY to Conspiracy to Commit Grand Larceny" and that "[h]aving heard the evidence and the argument of counsel, the Court finds the defendant guilty of [. . .] Conspiracy to Commit Grand Larceny (F)[.]" (emphasis added). Simply put, Mr. Chase was "convicted of a felony." Applicants who have "been convicted of a felony" are disqualified from obtaining a handgun permit. Md. Code Ann., Pub. Safety § 5-306(a)(2). We "will affirm the decision of the agency when it is supported

34

by substantial evidence appearing in the record and it is not erroneous as a matter of law." *McCloud*, 200 Md. App. at 729. As such, we conclude that it was proper for the Department to deny Mr. Chase's Application.[25]

For the sake of argument, let us assume that the sentence provision of § 5-306(a)(2)(i) applies to both felonies and misdemeanors, or alternatively, that we agree with Mr. Chase and should equate his conviction to that of a misdemeanor. For his conviction, the Court sentenced Mr. Chase to: "Incarceration with the Virginia Department of Corrections for the term of: 3 years for Conspiracy to Commit Grand Larceny. The total sentence *imposed* is 3 years." (emphasis added). Incarceration is synonymous with imprisonment. *See Imprisonment*, BLACK'S LAW DICTIONARY (12th ed. 2024). Although all but 30 days were suspended, the sentence imposed was three years. *See Moats*, 358 Md. at 596–97 (holding that the suspended portion of a sentence is still part of the *imposed* sentence).

Applicants who have "been convicted of a felony or of a misdemeanor for which a sentence of imprisonment for more than [one] year has been imposed" are disqualified from obtaining a handgun permit. Md. Code Ann., Pub. Safety § 5-306(a)(2). If we

---

[25] While we review "the agency's decision directly, not the decision of the circuit court" or the ALJ, we would be remiss if we did not note an error by the ALJ. *See McCloud*, 200 Md. App. at 729 (quoting *McLean*, 197 Md. App. at 437). The ALJ, in its ruling, stated that the "Department disapproved [Mr. Chase's] application because he had a disqualifying conviction" and as a result the ALJ upheld the Department's decision. However, the Department specifically testified at the Administrative Hearing that Mr. Chase was not disqualified under § 5-133(b)(1) for a disqualifying conviction. While the ALJ was correct in upholding the Department's denial of Mr. Chase's Application, the basis in which it did so was incorrect.

consider Mr. Chase's conviction a felony and that the sentence provision applies to felonies, because the sentence imposed on Mr. Chase was more than one year, he is disqualified from obtaining a handgun permit. Therefore, it was proper for the Department to deny Mr. Chase's Application under this scenario.

If we consider Mr. Chase's conviction a misdemeanor and that the sentence provision applies to misdemeanors, because the sentence imposed on Mr. Chase was more than one year, he is disqualified from obtaining a handgun permit. As previously discussed, even assuming the out-of-state offense is converted to the equivalent Maryland offense, it does not affect the sentence considering the language in the statute refers to a "sentence imposed." Therefore, it was proper for the Department to deny Mr. Chase's Application under this scenario as well. Under any one of the three scenarios, Mr. Chase is disqualified from obtaining a handgun permit and the Department's denial of his Application was proper.[26]

## V.   CONCLUSION

In conclusion, although § 5-306(a)(2)(i) is facially clear, how the statute applies to out-of-state convictions is ambiguous. However, we hold that the Maryland equivalency analysis used under § 5-101(g)(3) for out-of-state convictions cannot be imported to § 5-306. The statutes serve distinct regulatory objectives, employ materially different language, and rely on different sentencing concepts. Section 5-101(g)(3) expressly focuses on the statutory maximum penalty for an equivalent Maryland offense, whereas

---

[26] We surmise this is why the Department testified that the "disapproval is about the sentence [Mr. Chase] received, not the crime per se."

§ 5-306(a)(2)(i) includes a sentence provision that relies on the actual sentence imposed in the applicant's case. The legislative history further underscores that distinction, as the legislature deliberately replaced "could have been imposed" with "has been imposed," signaling an intent to rely on the actual sentence imposed, not a hypothetical Maryland penalty. Such distinctions indicate an intention that the statutes be treated separately.

Because the equivalency analysis is not required under § 5-306(a)(2)(i), Mr. Chase's Virginia conviction—classified as a felony with an imposed sentence of three years—disqualifies him from obtaining a handgun permit. Even assuming *arguendo* that the offense was converted to a Maryland misdemeanor, the sentence imposed exceeds one year. Under any scenario, Mr. Chase is disqualified under § 5-306(a)(2)(i), and the Department properly denied his Application. As such, we affirm the judgment of the Circuit Court for Charles County.

**JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**